## N. L. SPEER v. THE STATE.

No. 15335.   Delivered November 16, 1932.
Rehearing Denied March 15, 1933.
Reported in 58 S. W. (2d) 95.

The opinion states the case.

*Earle Adams, Jr.*, of Houston, *F. L. Henderson* and *Lamar Bethea*, both of Bryan, *M. L. Bennett*, of Normangee, *A. T. Mc-Kinney*, and *M. E. Gates*, both of Huntsville, and *Warren W. Moore*, of Austin, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft; the punishment, confinement in the penitentiary for three years.

The conviction was under an ordinary indictment for theft as defined in article 1410, Penal Code.

Appellant was sheriff of Walker county. On May 31, 1929, he sent his account to the Comptroller, showing that the state owed him fees amounting to $1,626.95. On the same date the Comptroller issued a warrant, payable to appellant, in the sum of $2,626.95. This warrant was mailed to appellant, and he received it in Walker county. It appears that the excess of a thousand dollars was due to an error on the part of the employee issuing the warrant. On June 3, 1929, appellant en-

dorsed the warrant and deposited it in the Huntsville State Bank, in Walker county, receiving a general deposit slip showing that his account was credited with the sum of $2,626.95. On June 5, 1929, the warrant was cleared in Austin, Travis county; $2,626.95 being paid to the Austin National Bank by the state treasurer. This amount was later transmitted to the Huntsville State Bank. The officers of the Huntsville State Bank testified that they did not accept the warrant for collection, but stated in substance that they bought it from appellant. Appellant did not testify.

It is insisted that, under the provisions of article 197, Code of Criminal Procedure, the venue was in Walker county. We quote: "Where property is stolen in one county and carried off by the offender to another, he may be prosecuted either in the county where he took the property or in any other county through or into which he may have carried it."

It appears that the holding in Townsend v. State, 51 S. W. (2d) 696, is applicable here. In that case, in the opinion on the motion for rehearing, this court said:

"We have carefully considered appellant's argument in this regard, and are still of opinion that the venue was properly laid in Travis county, and wish to say, in addition to what we said originally, that since fees payable by the state are payable by and out of the state treasury, which is located in Austin, Travis county, Tex., the venue of every illegal collection and receipt of state-owed fees prosecuted under article 365, P. C., would appear in every case conceivable by us at this time to properly be laid in Travis county, unless otherwise fixed by statute. The question of demand aside, the state parts with no fees, and is not deprived of any money as fees; nor does the officer or other person authorized to demand and receive fees, who holds fraudulent warrants or evidences of indebtedness against the state treasury, receive the money thereby or therein illegally called for, in so far as receipt thereof is made illegal by article 365, P. C., until same has been paid by or from the state treasury. The officer or other person authorized by law to demand or receive fees from the state of Texas, who willfully uses an innocent agent, or willfully sets in motion the machinery through whose operations, without knowledge of the wrong, the money is taken from the state and out of its treasury, no matter where he starts his machinery or procures his agent, must be held triable at the place where the money is gotten from the state, i.e., the place where the offense of reception of state funds is consummated or effected, and where the state parts with its money upon the false warrant or account. * * *

"The same matter is discussed and authorities cited in Houston v. State, 98 Texas Crim. Rep., 284, 285, 265 S. W., 585. The fact that the officer or other person whose account, warrant, etc., was the basis of the prosecution, and who inaugurated the movement whose consummation took the money out of the treasury, may have deposited such warrant or sold it outright in Bastrop, Tex., or Washington, D. C., would not seem in the least to affect the question of venue of the prosecution; nor would the fact that such warrant had to or did pass through various innocent hands or channels before it came to the state treasury in Travis county, where the state is by such means induced to part with its money, alter the principle or affect the question of venue, under a proper application of article 68, P. C. The presence in our statute of this article and its interpretation by our courts makes inapplicable authorities cited by appellant. By what we have above said we do not wish to be understood as holding that one who, by the use of a false warrant or evidence of indebtedness against the state, defrauds some private person, may not be tried for such act in the county where it takes place."

From Branch's Annotated Penal Code, sec. 2428, the following is taken: "If defendant fraudulently procured a person innocent of any fraudulent intent to take the property for him, it is a taking through an innocent agent, and a taking by an innocent agent is a taking by defendant. In a legal sense, defendant was present when the act was done if he fraudulently caused that act to be done by an innocent agent although in fact he was in a different county or state."

In support of the text the following authorities are cited: Madison v. State, 16 Texas App., 442; Doss v. State, 21 Texas App., 509, 2 S. W., 814; Dale v. State, 32 Texas Crim. Rep., 78, 22 S. W., 49; Sikes v. State, 28 S. W., 688; Lane v. State, 41 Texas Crim. Rep., 559, 55 S. W., 831; Walls v. State, 43 Texas Crim. Rep., 70, 63 S. W., 328; Jessup v. State, 44 Texas Crim. Rep., 83, 68 S. W., 988; Farris v. State, 55 Texas Crim. Rep., 481, 117 S. W., 798.

In applying the law to the facts the court instructed the jury as follows: "Bearing in mind the foregoing instructions, I charge you that if from the evdence in this case you are satisfied beyond a reasonable doubt that the defendant, N. L. Speer, on or about the 31st day of May, 1929, obtained from the possesson of the State of Texas with the consent of an agent or employee of the State of Texas a treasury warrant dated May 31, 1929, for the sum of $2626.95, payable to the order of N. L. Speer, Huntsville, signed W. Gregory Hatcher, State Treasurer

and countersigned S. H. Terrell, State Comptroller of Public Accounts, and the said warrant called for the payment of $1,000.00 in excess of the amount actually due the defendant, N. L. Speer, from the State of Texas at said time and the said $1,000.00 excess was the property of the State of Texas; and if you further find from the evidence in this case beyond a reasonable doubt that upon the receipt of such warrant the said N. L. Speer deposited the same in the Huntsville State Bank in Huntsville, Texas, for the purpose of obtaining said $1,000.00 excess and with the intent of appropriating the same to his own use and benefit and as a result of such deposit did take, or cause to be taken, from the State of Texas the $1,000.00 excess in Travis county, Texas, and appropriate the same to his own use and benefit with the intent to deprive the said owner of the value thereof you will find the defendant guilty of theft as charged in the indictment and assess his punishment at confinement in the State pententiary for not less than two nor more than ten years as you may determine and state in your verdict."

Appellant excepted to the foregoing charge on the ground that it did not require the jury to find that he had the intention of appropriating the money at the time of the reception of the warrant, but authorized a conviction if he formed the intent to appropriate the money at the time he deposited the warrant in the Huntsville State Bank, which was after he had come into possession of the same. The opinion is expressed that, under the facts reflected by the record, the exception was not well taken. Appellant was charged with appropriating a thousand dollars in money. The warrant he received from the comptroller's office was the means by which he secured this sum of money. If appellant formed the intent to appropriate the money at the time he used the bank as an innocent agent for obtaining the money by placing the warrant in the bank, and receiving credit for the amount thereof, and did appropriate the money, it would appear that the act becomes criminal under the terms of article 1413, P. C., which provides: "The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

In Hedge v. State, 229 S. W., 862, this court, speaking

through Judge Lattimore, said: "If A owes B $7.50, and by mistake gives in settlement a check for $75.00, which B accepts, places in his pocket, and presents at the bank, and, upon payment to him by the bank of the $75.00 called for by said check conceives the intent to appropriate the $67.50 excess, he would be guilty of theft of such excess."

A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

MORROW, PRESIDING JUDGE.—Supplementing the foregoing opinion of the commission, the following observations are made concerning venue by the Court of Criminal Appeals:

The warrant issued by the state for $2,626.95 was not a negotiable instrument in the sense that it would have entitled an innocent purchaser of the warrant to acquire from the state the amount stated on the face of the warrant, but such purchaser would acquire no more than a right to collect from the state the amount that it owed the appellant, namely, $1,626.95. No authority for the issuance of the warrant for the amount stated in its face or to pay the full amount of such warrant existed. No purchaser of the warrant, whether in good faith or not, could legally demand from the state the payment of more than the amount which was owing. See Ency. of Law Proc., vol. 11, p. 531; vol. 7, p. 818; vol. 36, p. 895; Corpus Juris, vol. 59, p. 269, sec. 406; Tex. Jur., vol. 11, p. 665, sec. 118.

Speaking of the negotiability of a warrant, in the section of Corpus Juris mentioned above it is said: "It is not, however, a negotiable instrument in the sense of the law merchant so as to shut out as against a bona fide purchaser inquiries as to its validity or preclude defenses or set-offs which could be asserted as against the original payee. * * * As against the state the assignee acquires no greater rights than the party to whom the warrant was originally issued."

From the section of Texas Jurisprudence mentioned, the following is quoted: "While warrants are in the ordinary form of commercial paper, they do not possess the qualities of such paper; they are not negotiable instruments."

See Scott County v. Advance-Rumley Tresher Company, 36

A. L. R., 937, in the syllabus of which it is said: "One taking a county warrant takes it subject to defenses that might be interposed were it held by the orginal payee."

Many authorities are cited, including 2 R. C. L., 629; 1 R. C. L. Supp., 596; 4 R. C. L. Supp., 121.

At page 951 of the Amer. Law Rep., vol. 36, supra, are collated a number of decisions of this and other states affirming the principle last stated.

Predicated upon the foregoing remarks and authorities, the opinion is entertained that, if Speer, with knowledge of the fact that there was a mistake in the issuance of the warrant to the extent of $1,000, concealed the vice in the warrant and sold it to the bank with fraudulent intent and acquired the funds of the bank, he apparently might have been prosecuted for swindling at the place where the swindling occurred. In the transaction as it appears here, however, it seems that, as Speer, knowing the vice in the warrant, withheld such knowledge from the bank, and used the managers of the bank and their correspondents as innocent agents to fraudulently obtain from the treasurer of the state a thousand dollars, his offense is theft, with the venue at Austin, where the money was fraudulently acquired for his benefit.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE. — Appellant urges that the court below erred in his charge in that part of his definition of theft which says: "If the taking, though originally lawful and with the consent of the owner, was obtained with an intent to deprive the owner of the value thereof and to appropriate the said property to the use and benefit of the person taking, and same is so appropriated, the offense of theft is complete." As we understand it, appellant's position is that, since he came into possession, by mistake, but without illegal act on his part—of a warrant which called for $1,000.00 more than he was entitled to, which warrant was thereafter the means of obtaining a thousand dollars from the state—and since his indictment was for theft not of the warrant, but of the money, the above definition would not be applicable to the facts, and would be confusing to the jury, and an attempt to apply a charge submitting such theory would necessarily be on the weight of the evidence. There can be no question of the correctness of the abstract proposition of law contained in the definition above set forth, nor do we think there can be any as to its application to the facts in this case when we keep before us the idea that the subject of the theft charged here is not the warrant, but one

thousand dollars in money; and that in applying the law to the facts the jury were told in the charge that, if appellant obtained from an agent of the state a warrant which called for one thousand dollars in money in excess of the amount due appellant, and that he deposited said warrant in a bank for the purpose of getting from the state said thousand dollars, and that as a result of his act such thousand dollars was gotten from the state in Travis county, Texas, and so appropriated, appellant would be guilty of theft, etc. We do not think it possible for the jury to have been misled by the definition complained of, nor that it burdened the record with any matter adverse to appellant as was the situation in Bow's case, 31 S. W., 170, cited by appellant.

Nor do we think complaint of paragraph 2 of the charge, to which we have just referred, well taken. Certainly there is nothing therein which would cause the jury to convict for the mere getting of the warrant, even though same called for an amount in excess of that due appellant. The court in his charge, after setting out what he deemed to be a statement concerning the receipt of the warrant, further said: "If you further find * * * that upon the receipt of such warrant * * * Speer deposited it * * * for the purpose of obtaining said $1,000.00 excess and with the intent of appropriating the same * * * and as a result of such deposit did take, or cause to be taken, from the State of Texas the $1,000.00 excess," etc.

Further criticizing paragraph 2 of said charge, and our statement in the original opinion that, "If appellant formed the intent to appropriate the money at the time he used the bank as an innocent agent for obtaining the money, etc., the act becomes criminal under the terms of article 1413, P. C.," appellant urges the law to be that, when one receives some check, warrant, etc., calling for more than is due him, and entertains no intent at the time of such reception, to appropriate same, he would not be guilty of theft, and further urges that the case of Hedge v. State, 89 Texas Crim. Rep., 236, sustains this position. The case mentioned is misapprehended by appellant. We observe that in any case one who receives a check, warrant, etc., calling for more than is due, becomes punishable for the theft of the excess when he has appropriated same in pursuance of an intent to deprive the owner, etc. If such person be unaware when the check first reaches him, as in the illustration used in the Hedge case, supra, that there is any excess in its amount, the keeping of the check in his pocket for any length of time before cashing or depositing same, or becoming aware of such excess would not amount to an appropriation, in the

absence of other testimony of such intent, but such person would be guilty when having discovered the mistake, he appropriates the excess. It seems correct, as contended by appellant, that the intent to deprive would ordinarily be inferred when deposit is made, if made by the payee in person, of the whole amount, including the excess, but the actual appropriation of the state's money in a case like this could not take place until such money has been paid out by the state.

Appellant did not testify, or offer any testimony, suggesting that he did not know of the excess at the time he deposited the warrant in question in the bank, and thus set in motion the chain of events which led to the getting of the thousand dollars excess from the state. There was some such suggestion like this in the Hedge case, supra, in which we said: "We think at the time appellant acquired said *money* if his acquisition was accompanied with the intent at the time to appropriate said excess, it made him guilty of theft of the money." It will be noted that what we said had reference to the acquisition of the money—not the check.

We do not find any exception to the charge in this case for failure to tell the jury that appellant must have known that the warrant received contained an amount in excess of what was due him, before any criminality would appear. Probably appellant did not take such exception because of the fact that it was in evidence that his claim and account sent from his office to the comptroller's office, upon which the warrant was issued, was for $1,626.95, and the warrant which came in response was for $2,626.95, and this latter amount was deposited by the appellant in a bank soon afterward.

We have carefully considered the well-prepared motion, and argument in support thereof, but think the case was properly disposed of originally.

The motion for rehearing will be overruled.

*Overruled.*